IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FREDERICK T. HOLMES,                *
       Plaintiff,
v.                                  *       CIVIL ACTION NO. WDQ-11-2341

WARDEN JAMES P. MORGAN, et al.,     *
       Defendants.
                         ***

## MEMORANDUM

Pending are the Defendants Warden James P. Morgan and Correctional Officers Ronald J. Ellsworth and Barry J. Barton's Motions to Dismiss or for Summary Judgment (ECF Nos. 10 & 19) and the Plaintiff's responses (ECF No. 12 & 21).[1] Upon review of the papers and exhibits filed, the Court finds a hearing in this matter is unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated, the Motion will be construed as a Motion for Summary Judgment and granted.

## Background

In his unverified complaint, Holmes, a wheelchair-bound inmate currently confined at the Western Correctional Institution ("WCI"), alleged that on October 13, 2010, he fell out of his wheelchair while being driven from WCI to the Maryland Correctional Institution-Hagerstown ("MCI-H") for evaluation by a kidney specialist, and received inadequate care from the fall. ECF No. 1 at 2.

On October 13, 2010, Officer Barton strapped Holmes, in his wheelchair, into a Department of Correction ("DOC") van to bring him to MCI-H. *Id.*; ECF No. 19-2 at 2.[2] Barton and Ellsworth secured the wheelchair in the van, and secured the seatbelt around Holmes.

---

[1] Holmes filed a Motion for Judicial review and Hearing Before Trial (ECF No. 12), which will be denied and construed as a response in opposition to the defendants' motions.

[2] Affidavit of Officer Ellsworth.

ECF No. 19-2 at 2. As Ellsworth, the driver, turned from Interstate 70 onto the exit ramp at exit 29, Holmes fell from his wheelchair. *Id.*

Holmes alleges that Barton and Ellsworth ordered him to get back in his wheelchair but he was unable to do so because of his injury. ECF No. 1 at 2. He claims that he was left on the floor of the van for about one and a half hours until the van arrived at MCI-H. *Id.* He states that when he arrived at MCI-H he was seen by the kidney specialist but he received no medical attention for his injuries from falling from the wheelchair. *Id.* He asserts that when he returned to WCI he was provide some medical attention to his lower body injuries but received no medical attention regarding injuries to his head. *Id.* He maintains that he is still being denied proper medical treatment and that "the warden and institution are well advised of this situation but are simply ignoring this Plaintiff's request for medical care." *Id.*

Ellsworth swears that he stopped the van at the end of the ramp, and he and Barton checked on Holmes. ECF No. 19-2 at 2. They decided not to return Holmes to his wheelchair because its seat had torn in half. *Id.* at 3. They moved Holmes into an upright position with his legs in front of him. *Id.* at 2. They noticed that the wheelchair straps were still in place, but the seat belt had been unbuckled. *Id.* at 3.

When they arrived at MCI-H, a nurse examined Holmes and determined that he could be moved. *Id.* He was placed in an intact wheelchair and brought to the medical department. *Id.* Dr. Dolph Druckman tried to examine Holmes, but he complained that he could not move his right side and reported he was in severe pain. ECF No. 19-4 at 1.[3] He demanded to be taken to an emergency room. Holmes was so belligerent, disruptive and uncooperative that Dr. Druckman could not perform the examination. *Id.* Holmes received pain medication and was

---

[3] Patient visit summary by Dolph Druckman, MD, October 13, 2010, 11:11 a.m.

allowed to proceed with his kidney appointment. *Id.* Afterward, Dr. Druckman again attempted to examine the Plaintiff but the Plaintiff again became belligerent and refused to cooperate. *Id.*

When Holmes returned to WCI on October 13, 2010, he was taken to the Special Observation Housing area ("SOH"). ECF No. 19-5 ¶5.[4] Nurse William Beeman saw Holmes moving his hands and feet "well," ECF No. 19-4 at 2, and Dr. Colin Ottey noticed that Holmes was "banging on [the] cell door with [his] hands and feet," complaining of hunger, and joking with the SOH officer, and using the bathroom, *id.* at 4. When his cell door was opened so that Dr. Ottey could examine him, Holmes was "loud and abusive." *Id.* at 4. Initially, he claimed he could not move his arms or legs, and would not allow Dr. Ottey to examine him. *Id.* Eventually, Holmes allowed Dr. Ottey to examine him. *Id.* Dr. Ottey noted that the Holmes was able to move his extremities when not touched, but when staff attempted to touch him he would stiffen his limbs, preventing examination for injuries. *Id.* Dr. Ottey concluded that Holmes was "able to move all extremities without difficulty," there were no "symptoms of a fall" and "no cuts, abrasions or wounds."[5] *Id.*

The next day, during a scheduled medical visit, Holmes complained about the fall and claimed he had not been seen by a doctor. *Id.* at 5.[6] Holmes was agitated and argumentative, and terminated the visit when told his Benadryl prescription could not be renewed without discussion with another doctor. *Id.* On October 20, 2010, Holmes reported to Dr. Ottey that he was suffering from pain and seeing black spots in his right eye. He discussed his fall on the

---

[4] Affidavit of Tennille Winters, Litigation Specialist. Oct. 3, 2011.

[5] Color photographs of Holmes taken after the fall show cuts and bruising on his wrists and legs. ECF No. 10-3. It is unclear whether these marks are old or new.

[6] In his opposition, Holmes contends that the Defendants have attempted to block out portions of his medical records. ECF No. 21-2 at 3. His date of birth is blocked out to protect the Plaintiff's privacy. The markings referenced by the Plaintiff are highlight marks. *See id.*

3

transport van and complained that as a result of the fall he had "difficulty getting from his bed to the toilet" and feeding himself due to an injured right shoulder. *Id.* at 7. Dr. Ottey ordered x-rays and admitted Holmes to the infirmary where he remained for one day. *Id.* at 8.

On October 25, 2010, the Plaintiff complained to Dr. Ava Joubert that he was hurting all over. *Id.* at 15. He told her that x-rays had been ordered but not taken because he was unable to stand to get on the x-ray table. *Id.* Dr. Joubert noted that Holmes was agitated, irritable, and uncooperative and would not permit his blood pressure to be taken. *Id.* Dr. Joubert found "no obvious joint deformities or swelling" and saw Holmes move all his extremities. *Id.* at 16. She was unable to make further diagnosis because Holmes would not permit a full assessment. *Id.* Dr. Joubert ordered the Plaintiff transported to a hospital for x-rays. *Id.* The x-rays, taken the same day, revealed "no acute post traumatic osseous abnormalities" as to the Plaintiff's hips, pelvis, and right shoulder, "minimal disc space narrowing in the lower lumbar spine," and "no acute process" as to his chest. *Id* at 18. Holmes refused to appear for two scheduled medical appointments on October 29 and 30, 2010. *Id.* at 23-24.

Warden Morgan swore that he has no "supervisory control over the medical care providers" or authority to "dictate the kind of treatment a patient is to receive" or "influence the medical decisions of the private health care providers contracted to work with the state." ECF No. 19-6.

On August 17, 2011, Holmes filed a complaint against Morgan, Barton, and Ellsworth under 42 U.S.C. § 1983, alleging violations of the Eighth Amendment prohibition of cruel and unusual punishment. ECF No. 1 at 1.  On October 28, 2011, Morgan moved to dismiss or for summary judgment.   ECF No. 10.  On November 21, 2011, Holmes moved "For Judicial Review And [a] Hearing Before Trial" arguing against summary judgment, and opposed the

motion for summary judgment. ECF Nos. 12, 13. Holmes supplemented his motion on December 19, 2011. ECF No. 16. On March 20. 2012, Barton, Ellsworth, and Morgan moved to dismiss or for summary judgment.[7] ECF No. 19. Holmes opposed the motion. ECF No. 21.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a), which provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). The "party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (internal quotation marks omitted). The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The Court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

---

[7] Ellsworth and Barton were accidentally excluded from Morgan's first motion for summary judgment. ECF No. 17 ¶1.

## Discussion

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S.294, 297 (1991)).

To establish an Eighth Amendment claim, the plaintiff must present evidence that prison officials acted with a culpable state of mind to deprive Plaintiff of a basic human need that is objectively sufficiently serious. *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (Eighth Amendment prohibits "unnecessary and wanton infliction of pain."); *see also Helling v. McKinney*, 509 U.S. 25, 32 (1993) (deliberate indifference to future harm caused by ETS).

To support an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the defendants' actions or inactions amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The plaintiff must show that (1) he was suffering from an objectively serious medical need, and (2) the prison staff were subjectively aware of the need for medical attention but recklessly failed to provide the needed care or ensure it was available. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).[8] "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997).[9] If the

---

[8] Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40.

[9] "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot

requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844. The Court assesses the reasonableness of the actions in light of the risk the defendant actually knew about at the time. *Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000).

Ellsworth swore that Holmes was properly secured in the van. ECF No. 19-2 at 2. Holmes offers no explanation for how his seat belt became unbuckled during transport, other than indicating the van made one sharp quick turn. ECF No. 1 at 2. He does not refute the Defendants' position that his wheelchair was strapped in and he was buckled in the wheelchair.[10] In fact, he states in his complaint that "[he] was strapped in by Officer Barton." ECF No. 1 at 2. Further, the evidence is that the van was promptly stopped and the Plaintiff was attended to as soon as he had fallen. ECF No. 19-2 at 2. Ellsworth and Barton decided it was not possible to place Holmes back in his wheelchair because the seat had ripped. *Id.* After helping Holmes into an upright position they continued to their destination where he received medical care. *Id.* There is no allegation, much less evidence, that the Defendants Ellsworth and Barton acted wantonly to cause harm to the Plaintiff. Thus, they are entitled to summary judgment. *See Rich*, 129 F.3d at 340 n.2.

In order to demonstrate liability under § 1983 on the part of supervisory defendants, the plaintiff mush show that the supervisory defendants: (1) "failed promptly to provide an inmate with needed medical care," (2) "deliberately interfered with the prison doctors' performance," or

---

be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) (*quoting Farmer* 511 U.S. at 844).

[10] In his opposition to the dispositive motion, the Plaintiff points out that there is no photograph of him in a wheelchair strapped into the transport van. ECF No. 21. He mistakenly believes that the Defendants indicated they provided such a photograph to the Court. To the contrary, the Defendants provided photographs as exhibits of the van, wheelchair, and straps used to secure the Plaintiff and his wheelchair in the van. ECF No. 10-3.

(3) "tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (internal citations omitted). Warden Morgan swore that he has no "supervisory control over the medical care providers" or authority to "dictate the kind of treatment a patient is to receive" or "influence the medical decisions of the private health care providers contracted to work with the state." ECF No. 19-6. Holmes has pointed to no action on the part of the Warden interfering with his medical care. *See* ECF No. 1 at 2. To the contrary, the medical records show that any interference with the Plaintiff's medical care was the result of his own belligerence and unwillingness to cooperate with medical staff, not by the action or inaction of correctional employees. *See* ECF No. 19-4. The Warden is entitled to judgment.

## Conclusion

For the aforementioned reasons, Defendants' Motion, construed as a motion for summary judgment, shall be granted. A separate Order follows.

Date: 7/26/12

William D. Quarles, Jr.
United States District Judge